UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                )<br>)<br>ROBERT REPELLA,          )<br>)<br>    Defendant          )<br> | Criminal No. 20-10096-ADB |

**GOVERNMENT'S SENTENCING MEMORANDUM AND
MOTION FOR DOWNWARD DEPARTURE PURSUANT TO SECTION 5K1.1**

The government respectfully submits this sentencing memorandum and motion, pursuant to Section 5K1.1 of the United States Sentencing Guidelines (the "Sentencing Guidelines"), in connection with the sentencing of defendant Robert Repella.

Repella agreed to pay Georgetown University tennis coach Gordon Ernst at least $120,000 in exchange for Ernst's designation of Repella's daughter as a tennis recruit to the Georgetown women's tennis team, thereby facilitating her admission to Georgetown. While Repella's daughter played tennis competitively, her abilities were not at the level of a typical Georgetown recruit. Nevertheless, Ernst used a recruitment slot on her in exchange for payments from Repella, which Repella made in 2017 and 2018 by writing checks to Ernst or, on one occasion, mailing Ernst cashier's checks to pay for his daughters' private school tuition. Unlike most of the parents in the "college admissions" cases that arose from the government's "Varsity Blues" investigation, Repella was not part of the conspiracy masterminded by William "Rick" Singer. Instead, he arranged his bribery deal with Ernst directly. And Repella agreed to the quid pro quo arrangement with Ernst after just one meeting—the relationship was criminal from the jump.

At the same time, Repella has accepted responsibility for his conduct by pleading guilty to Count One of the Information and by providing substantial assistance to the government in the related case of *United States v. Ernst*, No. 19-cr-10081-IT. Taking these factors into account, along with the sentences imposed on defendants in the other college admissions cases, the government recommends that Repella be sentenced to one month of incarceration followed by one year of supervised release, a fine of $40,000, and 100 hours of community service.

## I.  Overview of the Offense Conduct

Repella, a former pharmaceutical executive, took an active role in his younger daughter's college application process. He personally emailed Ernst his daughter's transcripts before flying from his home in Pennsylvania to meet Ernst in Falmouth, Massachusetts on or about August 8, 2017. PSR ¶¶ 40-41. It was at this meeting that Ernst proposed that Repella pay him to recruit his daughter. *Id.* ¶ 41. Repella readily agreed, emailing Ernst just two days after the meeting to set up a time for his daughter to visit the Georgetown campus. *Id.* ¶ 42. During this visit, Repella made his first payment of $25,000 by handing Ernst a check with the payee line blank; Ernst later filled in his own name, leaving no doubt that the payments were going to the coach directly. *Id.* Just over two weeks later, Repella made a second $25,000 payment to Ernst, again by check with the payee line blank for Ernst to fill in his own name. *Id.* ¶ 44. Thereafter, Ernst designated Repella's daughter as one of his six tennis recruits for that application year. *Id.* ¶ 45. In fulfilling his end of the bargain, Repella continued to make payments to Ernst: two cashier's checks totaling $45,535 on or about June 25, 2018 made payable to Ernst's daughters' private school, and a third $25,000 check to Ernst on or about August 25, 2018—just as Repella's daughter was setting foot on campus as a freshman.

## II. The Applicable Sentencing Guidelines

The parties have stipulated in the plea agreement that Repella's total offense level under the Sentencing Guidelines is 12. That calculation reflects a base offense level of 8 under Section 2B4.1(a); a 6-level enhancement under Section 2B4.1(b)(1)(B) and 2B1.1(b)(1)(D) because the value of the bribe was more than $40,000 but not more than $95,000; and a 2-level decrease under Section 3E1.1 for acceptance of responsibility. The resulting Guidelines sentencing range is between 10 and 16 months.

The Probation Office has taken the position that Repella's total offense level under the Sentencing Guidelines is 5. That calculation reflects a base offense level of 7 under Section 2B1.1(a)(1); no increase under Section 2B1.1(b) because there was no actual financial loss or reasonably foreseeable pecuniary harm; and a 2-level decrease under Section 3E1.1 for acceptance of responsibility. The resulting Guidelines sentencing range is between 0 and 6 months. Although the government disagrees with the Probation Office's conclusions, the government does not intend to pursue its objection further in light of its ultimate sentencing recommendation.

## III. Sentencing Recommendation and Motion Pursuant to Section 5K1.1

The government submits that a downward departure under Section 5K1.1 of the Guidelines is appropriate to reflect Repella's substantial assistance with the government's investigation.

While Repella's wife initially lied to agents who had come to his home to interview him by telling them Repella was not home when, in fact, he was in the basement, Repella subsequently proffered with the government on two occasions in August 2019 and October 2019. Repella provided information about the details of his deal with Ernst as well as about additional cash payments he made to Ernst (pursuant to the proffer agreement, the government has not factored these additional payments into Repella's Sentencing Guidelines). Ernst ultimately pleaded guilty

3

to several charges in October 2021, including charges related to his recruitment of Repella's daughter in exchange for money and his failure to report the payments from Repella on his federal income tax return.

Repella's criminal conduct was serious. His actions undermined the integrity of the college admissions process. In terms of culpability, he falls squarely in the middle of the pack of parents the government has charged in the various college admissions cases, who agreed to bribe coaches in exchange for having their children recruited as athletes to facilitate their admission to college. Enhancing his culpability is the fact that, unlike some of the parents involved with Singer, who, in their own sentencings, offered misguided excuses for their conduct by suggesting that Singer led them to wrongdoing after gaining their trust over an extended period, Repella does not even have such an excuse: he agreed to the scheme after one in-person visit with Ernst. There was no go-between, and the relationship was criminal from its inception. Repella also took an active role in the scheme by initiating emails and meetings with Ernst, including flying to meet with Ernst in Falmouth. At the same time, there is no evidence that Repella involved his daughter in the scheme, the government is not aware of any lies on her application, and Repella was not a "repeat player"—he pursued fake athletic recruitment for only one of his children (although his older daughter had already graduated from college at the time Repella conspired with Ernst).

Sentences of other parents who engaged in the fraudulent athletic recruitment aspect of the college admissions cases have ranged from 12 months of home confinement (for Peter Dameris, who had serious, documented medical conditions involving his close family members) to 15 months in prison (for John Wilson, who was convicted at trial for conspiring with Singer to pursue the fraudulent athletic recruitment of all three of his children and cheating on his taxes). The average sentence imposed on parents who engaged in fraudulent athletic recruitment was just over

three months per child; here, the government is recommending a third of that based on Repella's timely acceptance of responsibility and cooperation.

The government is not recommending a period of probation, which the two other parent cooperators in the various college admissions cases—Bruce and Davina Isackson—have received. In recommending time served sentences for the Isacksons, the government considered their genuine and immediate remorse for their conduct and their years of cooperation against multiple other individuals, including numerous proffers and hours of preparation to testify in three trials, which involved numerous cross-country trips (and, in the case of Bruce Isackson, testifying in two trials and subjecting himself to extensive cross-examination). Repella's cooperation does not warrant such a substantial departure. While Repella provided valuable information about his interactions with and payments to Ernst and, in his proffer sessions with the government, appeared to take responsibility for his conduct, his cooperation was not as extensive as the Isacksons and the assistance he provided to the government's investigation not as substantial, particularly in light of the government's other evidence against Ernst. The government's recommendation seeks to balance the nature and seriousness of Repella's offense and his particular level of culpability with his cooperation and the sentences imposed on similarly situated defendants in the collective college admissions cases.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence the defendant to a term of imprisonment of one month, followed by one year of supervised release with 100 hours of community service, a $40,000 fine, and a $100 special assessment.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:   */s/ Kristen A. Kearney*
      KRISTEN A. KEARNEY
      LESLIE A. WRIGHT
      Assistant United States Attorneys

Date: July 1, 2022

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF).

By:   */s/ Kristen A. Kearney*
      KRISTEN A. KEARNEY
      Assistant United States Attorney