# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>ROBERT REPELLA )<br>)<br>)<br>Defendant. )<br>) | Criminal No. 20-cr-10096 |

## DEFENDANT ROBERT REPELLA'S
## SENTENCING MEMORANDUM

Defendant Bob Repella respectfully submits this memorandum to the Court in preparation for his sentencing on July 7, 2022.

### I. Personal Background

Notwithstanding this one instance of extremely poor judgement, Mr. Repella's life has been one of good character, respectful values and making a positive contribution to society through his work. Mr. Repella was born to working class parents in New York City. He was the first in his family to attend college. A pharmacist by trade, Mr. Repella has spent his entire career working in the pharmaceutical industry. Over the past decade, Mr. Repella has been focused on developing products for the treatment of rare health disorders, which unfortunately impact children in disproportionate numbers. A few years ago, he co-founded a biotech company in order to bring a novel medicine for a rare disease to the US. Previously, this drug was only available in Europe, and today it is widely available and utilized by thousands of patients in the United States every day.

Mr. Repella is the husband of Laurie and the father of two wonderful daughters, none of whom had any knowledge or involvement in the underlying conduct here. Mr. Repella is before this Court because of the poor decision he made, for which he promptly agreed to accept responsibility and fully cooperate with the Government.

II. **A sentence other than incarceration is "sufficient, but not greater than necessary" to meet the statutory goals outlined in 18 U.S.C. § 3553(a).**

Mr. Repella knows that he need not remind this Court of the seriousness of sentencing or engage in an extensive overview of the statutory underpinnings of a federal sentence. 18 U.S.C. § 3553(a) requires courts to impose the minimum sentence necessary to achieve broad goals set out therein. It in turn lays out factors that courts must consider when crafting said sentencing. Here, those factors—the circumstances of the offense, the applicable sentencing guidelines, deterrence, and the need to avoid unwanted sentencing disparities—ultimately support a sentence other than incarceration.

    a. **Circumstances of the offense**

The conduct outlined in the Information and the pre-sentence report fails to fully capture the entirety of the circumstances surrounding Mr. Repella's behavior. As this Court knows, none of Mr. Repella's conduct had anything to do with Rick Singer, the Key Worldwide Foundation, or the broader college admissions schemes the Government has prosecuted over the last few years.

    1. <u>Mr. Repella's daughter was academically and athletically qualified to be admitted to and play tennis at Georgetown (and did in fact play).</u>

There is no disputing this point: <u>Mr. Repella's daughter had the grades, test scores, and athletic ability to play tennis at Georgetown.</u> Mr. Repella's daughter played highly competitive tennis her entire life, including in over 100 U.S. Tennis Association events. In high school, Mr. Repella's daughter was a nationally ranked tennis player with excellent grades and tests scores.

2

Her then-coach of many years, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ stressed to Mr. Repella that she was good enough to play collegiate tennis (which Mr. Repella relied upon) and made an introduction to numerous college coaches, including Georgetown's then-head coach Gordon Ernst.[1] Mr. Repella met with Ernst who told him that Mr. Repella's daughter had the athletic ability to play tennis at Georgetown, but he explained that other recruits were also interested and had the requisite skills. He told Mr. Repella—who by this point he understood to be financially well off—that he had to support the program and asked for checks totaling $50,000. He told Mr. Repella to leave them blank to make sure the funds actually went to the tennis program, as opposed to the school or athletics writ large.

In sum and substance, he offered Mr. Repella a choice: pay money and your daughter can play here or decline and she cannot. Ernst—and the record now establishes he had attempted this ploy with other potential recruits—confidently presented the choice as if it was business as usual for less financially lucrative college sports programs. Ernst subsequently wrote in his own name on the checks and went back to Mr. Repella for more money.[2] The choice Mr. Repella made at this point was the wrong one and he regrets it dearly. He wishes he had been stronger and said no and alerted the school or law enforcement. But against this backdrop, Mr. Repella respectfully submits that the conduct here is fundamentally different than virtually all of the other cases that have passed through this courthouse in the past few years. There was no cheating to obtain test scores. There was no false information on his daughter's application. There was no using of athletics to get a non-athlete into school. There was no showing up on

---

[1] Ernst has subsequently pled guilty to this and similar charges.

[2] It was at this point that Mr. Repella understood that Ernst was pocketing the money personally.

3

campus and never playing the sport. Rather, this was an instance of a dad being presented with an extra price tag—which he was fortunate enough to be able to afford—and making the poor decision to pay it.

Mr. Repella's daughter matriculated to Georgetown.[3] She joined the tennis team and started her freshman year. Often playing singles against upperclassmen, she even won a match. She ultimately left the team after one season to pursue her academic studies. She recently graduated with a 3.67 GPA and a BS degree in nursing. She was fully exonerated by the University as having no awareness of any of this and is now an alumnus in good standing.

2. <u>Upon receiving a target letter, Mr. Repella promptly went in and gave a proffer where he told the full truth, including admitting to cash payments the Government did not know about.</u>

From the moment the Government contacted Mr. Repella, he did everything right. He promptly came in for a proffer with his previous counsel. He fully confessed to his actions, including admitting to cash payments that at that time were unknown to the Government. He signed a plea agreement and agreed to cooperate. The Government would subsequently supersede against Mr. Ernst and add additional charges specifically related to the conduct with Mr. Repella. A few months later, Mr. Ernst pled guilty, saving the Government, the court, and the taxpayers a significant amount of time and effort.

**b. The applicable sentencing guidelines**

Mr. Repella and the Government agreed in his plea agreement that the total offense level was 12, which results in a guideline range of 10 to 16 months. Probation contends the offense level is 5, which results in a guideline range of 0 to 6 months. A lengthy (and boring) book

---

[3] Mr. Ernst was relieved of his coaching duties before Mr. Repella's daughter matriculated. Undersigned counsel understands that Georgetown re-vetted the incoming recruits for academic and athletic capabilities based on other concerns it had about Ernst.

could be written about the history between the Government, Probation, and the defense bar regarding this calculation but the bottom line is this: every court that has considered the issue has agreed with Probation's calculation. *See, e.g.*, *United States v. Littlefair*, 19-cr-10463-ADB, Dkt. # 35, Sentencing Hearing Tr. at 7:10-16, July 15, 2020 ("I've seen what the other judges in this district have done, and it is my finding that the appropriate guideline is 2B1.1…that's how I'm resolving the issue.").

### c. Specific and General Deterrence

§ 3553 (a)(2) instructs courts to consider what sentence is necessary "to afford adequate deterrence to criminal conduct." *Id.* Mr. Repella respectfully submits that a sentence of probation will meet the sentencing goals of specific and general deterrence.

First, incarceration is not necessary to deter Mr. Repella from ever doing this, or anything like this, again. Mr. Repella is a first time offender and "[t]here is a demonstrable difference in the recidivism rates of real first offenders as compared to other defendants in Criminal History Category I. Minimal or no prior involvement with the criminal justice system is a powerful predictor of a reduced likelihood of recidivism." *United States v. Germosen*, 473 F. Supp. 2d 221, 227 (D. Mass. 2007) (internal citations omitted). Even if Mr. Repella were a typical defendant, he would be very unlikely to re-offend.

Of course, Mr. Repella is not typical defendant. He has brought tremendous shame and stress on his family and effectively ended his career. His plea received significant publicity in the Philadelphia area and he has to live with the fact that all of his friends and family know about this massive error.

Second, incarceration is also not necessary to serve as a general deterrence in this case. This matter has been in the public eye for over three years. It is simply not conceivable that anyone with the means to do this does not know that doing so will bring significant penalties.

Numerous parents have received a term of imprisonment. Regardless of what sentence this Court gives Mr. Repella, any member of the general public who would consider undertaking such conduct should know that there is a significant chance they will receive a term of imprisonment.

### d. Need to Avoid Unwanted Sentencing Disparities

§ 3553 (a)(6) instructs the court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* Over 33 parents have pled guilty and been sentenced thus far. Mr. Repella is perhaps the least culpable. As noted above, Mr. Repella's daughter was a qualified NCAA Division 1 tennis player who was academically able to go to Georgetown. Undersigned counsel has reviewed the cases in question and understands that Mr. Repella's daughter was the only child to competitively play the sport in question once arriving at college (some other children spent time on the teams in question).

Two other parents are particularly relevant here. Bruce and Davina Isackson pled guilty to participating in both the test scores scheme and using Mr. Singer to secure admission through sham athletic recruitments for two different children. Mr. Isackson also pled guilty to taking a tax deduction on the money paid to secure admission. However, like Mr. Repella, both Mr. and Ms. Isackson promptly agreed to plead guilty and cooperate with the Government. Like Mr. Repella, Ms. Isackson never had to testify. Mr. Isackson was sentenced to a year of probation, a $7,500 fine, and 250 hours of community service. Ms. Isackson was sentenced to a year of probation, a $1,000 fine, and 250 hours of community service. Mr. Repella respectfully submits that both his cooperation and the particular circumstances of the offense should lead to a sentence comparable to or lighter than these individuals.

### III. Conclusion

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007). This case presents the exact sort of significant mitigating factors that weigh in favor of a sentence of probation. Such a sentence would be sufficient, but not greater than necessary to meet the goals of § 3553(a).

                                              Respectfully submitted,

                                              ROBERT REPELLA

                                              By his attorneys,

                                              /s/ *Robert A. Fisher*
                                              Robert A. Fisher (BBO No. 652602)
                                              R. Scott Seitz (BBO No. 696658)

                                              NIXON PEABODY LLP
                                              53 State Street
                                              Boston, MA 02109
                                              617-345-1000
                                              rfisher@nixonpeabody.com
                                              sseitz@nixonpeabody.com

Dated: July 1, 2022

## LOCAL RULE 7.1(A)(2) CERTIFICATION

       I hereby certify that I conferred with counsel for the government in an attempt to resolve or narrow the issues raised by this motion and the government has notified me that it does not oppose the motion.

*/s/ Robert A. Fisher*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing was filed electronically on July 1, 2022, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

*/s/ Robert A. Fisher*